IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HECTOR TRINIDAD | : | CIVIL ACTION |
|   [KC-3982] | : | |
| | : | |
|     v. | : | |
| | : | |
| SUPERINTENDENT S.C.I. | : | |
| COAL TOWNSHIP, et al. | : | NO.   13-3983 |

### REPORT AND RECOMMENDATION

M. FAITH ANGELL
UNITED STATES MAGISTRATE JUDGE                              December 12, 2013

Presently before this Court is a *pro se* Petition for Writ of Habeas Corpus filed, pursuant to 28 U.S.C. §2254, by a state prisoner. Petitioner, Hector Trinidad, is currently incarcerated at the State Correctional Institution ["SCI"] in Coal Township, Pennsylvania, where he is serving an aggregate sentence of six and one-half to thirteen years imprisonment for firearms offenses. For the reasons which follow, I recommend that Mr. Trinidad's habeas petition be dismissed without prejudice for failure to exhaust state remedies, and that his request for a Stay and Abey Order be denied.

**FACTUAL AND PROCEDURAL HISTORY.**[1]

Petitioner was charged in relation to two separate shootings in late 2008. The Pennsylvania Superior Court, quoting the trial court, summarized the underlying facts and procedural history as follows:

> "On September 2, 2008, [at] approximately 2:35 [p.m.]. Appellant (Hector Trinidad), Rolando Rosado, and another male [named 'Scooby'], were standing on Rosado's porch[.] The [decedent, named Keith Bolden

---

1. The facts and procedural history are taken from the petition, and the Commonwealth's response with attached exhibits, Petitioner's reply, and the state court records.

(hereinafter 'Decedent Bolden'), and two other] males . . . walked towards [Rosado's] porch.   [As a witness named K.J.] testified:

> [As Decedent Bolden and the two other males] were coming down the block, approaching the porch, some words were exchanged between – well, not a whole conversation, but it just was like some animosity between these two . . . groups, and you know, weapons were pulled out and shots were fired.
> One group was retreating, running back, as [Appellant] and his group were firing towards the group.   So they were exchanging fire[.]

[K.J.] explained that when [Decedent Bolden] and his group were in front of the porch, Appellant and his group were concealing their weapons.  [K.J.] described the exchange of words as being with animosity.   He testified that [Decedent Bolden's friend, named] Raynell, fired first, and then 'it just went crazy from there.'   [K.J. testified] that once the firing began, [Decedent Bolden] and his group [were 'actually] pointing their guns and firing towards the porch and retreating backwards.'   At some point, [K.J.] observed that [Decedent Bolden's] gun jammed and was not operating[.]   According to K.J., when Decedent Bolden's gun jammed, Decedent Bolden quickly turned around] and started to flee.   Appellant and his group then ran [off of] the porch and Appellant began firing towards [Decedent Bolden while] Rosado and the other male shot at the others.  [K.J.] then fled from the block.

Another witness, [named B.M.], testified about the shooting and gave a statement to the police as follows[:]

> [ ] I was on my porch when I saw [Decedent Bolden] with four young boys.   They were coming down G Street from the corner store.   They were all creeping up and then they started to run.   I saw that they all had guns and they started shooting towards the guys in front of Ms. Rose's house, my next-door neighbor.   Then I saw [Appellant] and Scooby start shooting back towards [Decedent Bolden] and the young boys.   I ran inside my house and hid behind the couch until the shooting stopped.   Then I looked out the front of the house.   I saw [Decedent Bolden] lying on the cement a couple of houses down from my house.   There was a lady from the house that [Decedent Bolden] was in front of who put a pillow under his head and she put a napkin on his side where he was bleeding.   Then the police came and the ambulance took him away[.]

[Decedent Bolden] was transported to Temple University Hospital and pronounced dead.   An autopsy was conducted and it was determined that [Decedent Bolden] died as a result of a single gunshot wound to the back and that the manner of death was homicide.

> Police Officer Rose Matos [secured the crime scene]. Sergeant Steven Crosby arrived shortly thereafter and [supervised] the processing of the scene. [From the scene of the crime, Sergeant] Crosby and members of his unit recovered four firearms [as well as] live rounds, bullet fragments, and fired cartridge casings, all from .32 caliber, .45 caliber, and 9 [millimeter] weapons. Blood stains were observed and swap samples were made and submitted to the laboratory for analysis.
>
> Officer Ernest Bottomer, of the Firearms Identification Unit, conducted forensic analysis on the ballistics evidence collected. [Officer Bottomer] analyzed [the] four guns [that were found at the scene of the crime:] a Bryco 9 [millimeter] pistol with a barrel length of [3 ¾ inches]; a Davis .32 caliber automatic [firearm] with a barrel length of [4 ¾ inches; and, a fourth weapon that had jammed as a result of] a double feed in the magazine . . . [Officer] Bottomer [concluded that all four of the weapons were operable. N.T. Trial, 4/12/11, at 18, 24, 26, and 34-35. Officer Bottomer] also examined the fired cartridge casings recovered [at the scene] and [was able to conclusively determine that some of the cartridge casings were fired by] the weapons he examined. [Further, although Officer Bottomer could not 'conclusively' match all of the fired cartridge casings to a particular firearm, Officer Bottomer testified that the calibers of all fired cartridge casings were consistent with the firearms that he examined.]
>
> [A second incident] occurred [ ] on December 27, 2008[. At this time,] Rosado was *en route* to visit his mother [when] he encountered Appellant and another male [named] Luigi. Appellant and Luigi drew [their] weapons [on Rosado and] Luigi [asked Rosado] 'What are you going to do now?' [Appellant and Luigi then fired their weapons] at Rosado. Rosado fled with Luigi giving chase. When Rosado slipped and fell[,] Luigi shot him in the back. Later, Rosado explained to Detective Phillip Nordo that he was shot because Appellant believed he had given [a statement to the police] that incriminated Appellant in the shooting of [ ] Decedent Bolden."

*Commonwealth's Response to Habeas Petition:* Exhibit "A" (January 16, 2013 Superior Court Opinion) [Document 8-1], at 2-5.

Trinidad was charged, with respect to the murder of Keith Bolden, with third degree murder, criminal conspiracy, carrying a firearm without a license, and possessing an instrument of crime ["pic"]. With respect to the shooting of Rolando Rosado, Trinidad was charged with attempted murder and criminal conspiracy. All charges were

consolidated, and a jury trial was held before the Honorable Gwendolyn N. Bright of the Philadelphia Court of Common Pleas. *Id.,* at 5.

On April 15, 2011, Trinidad was found guilty of possessing a firearm without a license and pic. He was acquitted of third-degree murder of Bolden and conspiracy. The jury deadlocked on the charges relating to the shooting of Rolando Rosado.[2]

On July 14, 2011, Judge Bright sentenced Trinidad to an aggregate term of six and one-half to thirteen years imprisonment for the weapons convictions.[3] Trinidad filed a post-sentence motion which was denied. *Commonwealth's Response:* Exhibit "C" (Criminal Docket) [Document 8-3], at 7-8, 17-18.

On October 11, 2011, Petitioner filed a direct appeal to the Superior Court, arguing that the trial court committed reversible error in granting the Commonwealth's consolidation motion, and that there was insufficient evidence to support his weapons convictions. *Commonwealth's Response to Habeas Petition:* Exhibit "A" (January 16, 2013 Superior Court Opinion), at 6.

In its January 16, 2013 opinion, the Superior Court rejected all claims of error and affirmed the judgment of sentence. *Id.*, at 6-18. No request for discretionary review was filed in the state Supreme Court.

---

2    The Commonwealth represents that on June 28, 2012, a second jury found Trinidad guilty of the attempted murder of Rosado, aggravated assault and conspiracy. On September 5, 2012, Petitioner was sentenced, by the Honorable Lillian Ransom, to an aggregate term of twenty-seven and one-half to sixty years imprisonment on those charges. A direct appeal from this conviction is currently pending in the Superior Court. *Commonwealth's Response*, at 4 n.1.

3    A waiver trial was held before Judge Bright, on April 20, 2011, which resulted in Trinidad being found guilty of violating the Uniform Firearms Act for possessing a firearm as a convicted felon. Judge Bright did not impose an additional penalty for this charge at the July 14, 2011 sentencing. *Commonwealth's Response:* Exhibit "C" (Criminal Docket) [Document 8-3], at 17.

On March 12, 2012, while his direct appeal was pending, Trinidad filed a petition under the Pennsylvania Post-Conviction Relief Act ["PCRA"].  On June 17, 2013, he supplemented his PCRA petition.  *Commonwealth's Response:* Exhibit "C" (Criminal Docket), at 19-20.  Trinidad included nine claims of ineffective assistance of counsel in his supplemental pleading.  *Id:* Exhibit "B" (Amended PCRA Petition) [Document 8-2], at 5-7.  This petition is pending before the PCRA Court.

On July 2, 2013, Petitioner signed and dated the instant habeas petition; it was filed in this Court on July 9, 2013.  *Habeas Petition* [Document 1].[4]  Trinidad contends that he is entitled to habeas relief because:

1. "Petitioner is innocent and incarcerated in violation of Due Process, U.S.C.A. Amend(s) 5 and 14, resulting in miscarriage of justice. Petitioner's alibi, along with the lack of DNA evidence submitted by the Commonwealth which excluded Petitioner renders Petitioner's incarceration unconstitutional."
2. "Conviction obtained in violation of Due Process. Perjury/fabricated police reports.  U.S.C.A. Amend(s) 5 and 14.  The Commonwealth's only 'alleged' eye-witness perjured himself at trial and police fabricated police statements – affidavit of probable cause."
3. "Ineffective assistance of counsel – U.S.C.A. Amend(s) 5 and 14. Trial counsel failed to render effective assistance of counsel at pretrial, trial, and on direct appeal as counsel filed a meritless post-sentence motion and defective brief on direct appeal."
4. "Violation of 5th, 6th, and 14th Amendments U.S.C.A. Amend(s) 5, 6 and 14.  The convictions were obtained in violation of Petitioner's right to effective assistance of counsel as trial counsel never objected to inadmissible hearsay crime scene technician report in violation of Petitioner's confrontation rights."

*Id.*, at 5-14.  Trinidad also filed a motion to stay and abey, requesting that his habeas petition be stayed to permit him to exhaust state remedies.  *Petitioner's "Motion for Stay*

---

[4] For the purposes of this Report and Recommendation, under the prison mailbox rule, I will accept the earliest date, July 2, 2013, as the date of filing.  *See Burns v. Morton*, 134 F.3d 109, 113 (3d Cir. 1998).

*and Abbey of Protective Petition for Writ of Habeas Corpus [sic]"* [Document 2].

On November 7, 2013, the Commonwealth filed a response to Trinidad's habeas petition, arguing that his petition must be dismissed without prejudice so that he may exhaust his claims in state court.  The Commonwealth asserts that a stay in this case would be inappropriate because Trinidad has ample time to seek federal habeas relief after his PCRA proceedings are concluded.  *Commonwealth's Response,* at 1, 6-10.

## II.     DISCUSSION.

The exhaustion rule, codified in 28 U.S.C. §2254, generally requires a federal court to postpone habeas corpus jurisdiction until "the applicant has exhausted the remedies available in the courts of the State."  The exhaustion requirement is rooted in considerations of comity; the statute is designed to protect the role of the state court in enforcement of federal law and to prevent disruption of state judicial proceedings.  *Rose v. Lundy*, 102 S.Ct. 1198, 1203 (1982); *Castille v. Peoples*, 489 U.S. 346, 349 (1989).

"State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).  *See Walker v. Vaughn*, 53 F.3d 609, 615 (3d Cir. 1995)(quoting *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed2d 318 (1992) for the proposition: "Just as the State must afford the petitioner a full and fair hearing on his federal claim, so must the petitioner afford the State a full and fair opportunity to address and resolve the claim on the merits.").

The United States Supreme Court, in *Rhines v. Weber*[5], announced a "stay and abeyance" procedure which is applicable to §2254 habeas petitions that include exhausted and unexhausted claims and is "available only in limited circumstances." *Rhines*, 544 U.S. at 277. A habeas court may stay a habeas petition, rather than dismissing the petition without prejudice, pending the complete exhaustion of state remedies if the court "determines there is good cause for the petitioner's failure to exhaust his claims first in state court." *Id.*

The Third Circuit has held that the *Rhines* "stay and abeyance" procedure is equally applicable when the petitioner presents only unexhausted habeas claims. A stay of the federal habeas action should be granted only where "the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Heleva v. Brooks*, 581 F.3d 187, 190 (3d Cir. 2009).

Both the *Rhines* and *Heleva* Courts focused on timeliness concerns, namely whether a subsequent habeas petition would be untimely under AEDPA. *See Rhines*, 544 U.S. at 275 ("As a result of the interplay between AEDPA's 1-year statute of limitations and *Lundy*'s dismissal requirement, petitioners who come to federal court with 'mixed' petitions run the risk of forever losing their opportunity for any federal review of their unexhausted claims."). *See also Heleva*, 581 F.3d at 192-93 (declining to "definitively outline the bounds of" good cause but directing the District Court to consider the amount of time the petitioner had left under the AEDPA statute of limitations in making its good cause determination).

---

[5]    544 U.S. 269, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005).

The concern that a subsequent habeas petition filed by Petitioner would be untimely is not present in this case. Trinidad's conviction on the instant charges became final on February 16, 2013, when the time for filing an *allocatur* petition to the Pennsylvania Supreme Court expired. *See* Pa.R.App.P. 903(a)(petition for allowance of appeal shall be filed within thirty days from the entry of the order of the Superior Court sought to be reviewed). *See e.g., Harris v. Vaughn,* 129 Fed.Appx. 684, 685 (3d Cir. 2005)(where petitioner did not file an *allocatur* petition in the Pennsylvania Supreme Court, his judgment of conviction became final thirty days after the Superior Court affirmed his convictions) and *Lopez v. Rozum*, CA No. 04-5908, 2005 WL 1322515 at *3 (E.D. Pa. June 1, 2005)(petitioner's judgment of conviction became final when the time for seeking allowance of appeal in the Supreme Court of Pennsylvania on direct appeal expired). Accordingly, Petitioner's habeas statute of limitations began on February 16, 2013.

When Trinidad filed a timely PCRA petition on June 17, 2013, one hundred and twenty-one days of his one year federal habeas statute of limitations had expired.[6] The remaining two hundred and forty-four day statutory period will continue to be stayed while Trinidad's PCRA petition is pending in the state court system. It is not disputed that Petitioner's claims have not been exhausted in the state court system and are not exhausted for habeas purposes. *See Habeas Petition*, at 14-15 (" [ . . .] Whereas, Petitioner invokes this Court's jurisdiction and raises his innocence under the miscarriage of justice exception and requests for the grounds to be stayed until Petitioner attempts to exhaust issues in State Court. [ . . . ]").

---

6     The amount of days used up for statute of limitations purposes was confirmed by inputting the state date of his habeas limitations period (February 16, 2013) and the date on which Trinidad filed a procedurally proper PCRA petition (June 17, 2013) into an online calculator found at timeanddate.com. As the Commonwealth argues, Trinidad's first PCRA petition, filed while his direct appeal was pending, does not toll the federal habeas statute of limitations because it was not properly filed and the PCRA Court was without jurisdiction to consider this petition. *See Commonwealth's Response*, at 5.

Trinidad seeks a stay and abey order, arguing that he "shows good cause for requesting a Stay of grounds One (1) thru Four (4) in Habeas Petition: (A) – He is actually, factually, and legally innocent of the crimes; (B) – Trial counsel and Direct Appeals counsel, which were the same, filed a meritless Direct Appeal cause a meritless based decision to be rendered by the Superior Court, (C) – The U.S. Supreme Court recently held in the case McQuiggin v. Perkins 2013WL2300806 (U.S. 2013), that timing is a factor in evaluating reliability of a petitioner's innocence claim, (D) – The grounds raised are meritorious, and (E) – Petitioner may not be able to raise the ground(s) in State Court that is raised in Habeas Petition because counsel's ineffectiveness as the Superior Court's merits-based decision has become the law of the case and for this reason as well the Court should grant a Stay and Abey." *Motion to Stay and Abey* [Document 2], at 3.

This case does not present the "limited circumstances" where a stay and abey order is appropriate. Trinidad has not satisfied the three requirements for a stay: good cause, potentially meritorious claims, and a lack of intentionally dilatory litigation tactics. *See Heleva v. Brooks,* 581 F.3d at 192 (3d Cir. 2009). While not entirely clear, it appears that Trinidad is arguing that his actual innocence claim may be deemed waived in the PCRA forum and, therefore, he is afraid of "getting caught in a trap that his innocence claim ground one -1-) and how its going to be argued is untimely in this Court for not exercising due diligence in seeking a Protective Federal Habeas Corpus Petition in this Court as the affidavits submitted see. (Respondent's Ans. At Ex-B) are newly-discovered evidence." *Petitioner's Reply* [Document 10], at 3. As the Respondents note, Trinidad's PCRA petition is still in its initial phases and he has the ability to change or augment his claims before the state court. *Commonwealth's Response*, at 8 n.3 (pointing out that Trinidad's claim of actual innocence does not appear to have any direct

corollary in his pending PCRA petition).   Thus, Trinidad has not satisfied the good cause requirement to issue a stay and abey order.

Because the claims in Trinidad's habeas petition have not been exhausted in the state court system, the failure to exhaust is not excused, and imposing a stay in this case is not warranted, I make the following recommendation.

## **RECOMMENDATION**

For the reasons stated above, it is recommended that Trinidad's Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. §2254, be DENIED AND DISMISSED WITHOUT PREJUDICE to refile, if appropriate, after he exhausts his state court remedies, and that his motion for a stay and abey order be DENIED.   It is further recommended a finding be made that there is no probable cause to issue a certificate of appealability in that Petitioner has not made a substantial showing of the denial of a constitutional right or that a reasonable jurist would debate the correctness of this ruling.   *See* 28 U.S.C. §2253( c)(2); *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).[7]

                        BY THE COURT:

                         _S/M. FAITH ANGELL_____
                        M. FAITH ANGELL
                        UNITED STATES MAGISTRATE JUDGE

By email to:   the Honorable James Knoll Gardner
                Molly Selzer Lorber, Esq.           molly.selzer@phila.gov

By mail to:   Hector Trinidad
                KC-3982
                S.C.I. Coal Township
                1 Kelley Drive
                Coal Township, PA    17866

---

[7]   Petitioner is advised that he may file objections to this Report and Recommendation within fourteen (14) days after being served with a copy thereof.   *See* Local R.Civ.P. 72.1.   Failure to file timely objections may constitute a waiver of any appellate rights.